Lauren Tegan Rodkey, Esq. (SBN: 275830)
Price Law Group, APC
6345 Balboa Blvd, Suite 247
Encino, CA 91316
T: (818) 600-5526
F: (818) 600-5426
E: tegan@pricelawgroup.com

Youssef H. Hammoud, Esq. (SBN: 321934)
Price Law Group, APC
6345 Balboa Blvd, Suite 247
Encino, CA 91316
T: (818) 600-5596
F: (818) 600-5496
E: youssef@pricelawgroup.com
*Attorneys for Plaintiff,*
*James Zilli*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES ZILLI,<br><br>　　　　　Plaintiff,<br><br>v.<br><br><br>KIA MOTORS AMERICA, INC.,<br><br>　　　　Defendant. | **Case No. 8:19-cv-331**<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>1. TCPA, 47 U.S.C. c 227 *et. seq.*<br>2. RFDCPA, Cal. Civ. Code § 1788 *et. seq.*<br>3. Intrusion Upon Seclusion<br>4. Cal. Civ. Code § 3294<br><br>(Unlawful Debt Collection Practices) |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff James Zilli ("Plaintiff"), through his attorneys, alleges the following against

Kia Motors America, Inc., ("Defendant" or "Kia"):

//

//

## **INTRODUCTION**

1.  Count I of Plaintiff's Complaint is based upon the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. The TCPA is a federal statute that broadly regulates the use of automated telephone equipment. Among other things, the TCPA prohibits certain unsolicited marketing calls, restricts the use of automatic dialers or prerecorded messages, and delegates rulemaking authority to the Federal Communications Commission ("FCC").

2.  Count II of Plaintiff's Complaint is based upon Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), CAL. CIV. CODE § 1788, which prohibits debt collectors from engaging in abusive, deceptive and unfair practices in connection with the collection of consumer debts.

3.  Count III of Plaintiff's Complaint is based upon the Invasion of Privacy – Intrusion Upon Seclusion, as derived from § 652B of the Restatement (Second) of Torts. § 652B prohibits an intentional intrusion, "physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns… that would be highly offensive to the reasonable person."

4.  Count IV of Plaintiff's Complaint is based upon Exemplary Damages, Cal. Civ. Code § 3284, which allows a Plaintiff to recover punitive damages "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice."

## **JURISDICTION AND VENUE**

5.  Jurisdiction of the court arises under 28 U.S.C. § 1331 and 47 U.S.C. § 227.

6.  Venue is proper pursuant to 28 U.S.C. 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this District.

7.  Defendants transact business here; therefore, personal jurisdiction is established.

## PARTIES

8.  Plaintiff is a natural person residing in California.

9.  Plaintiff is a "debtor" as defined by *Cal. Civ. Code § 1788.2(h)*.

10. Defendant is a "debt collector" as defined by *Cal. Civ. Code § 1788.2(c)*.

11. At all relevant times herein, Defendant, Kia, was a company engaged, by use of mails and telephone, in the business of collecting a debt from Plaintiff which qualifies as a "debt," as defined by *Cal. Civ. Code § 1788.2(d)*.

12. Defendant is a debt collector with its principal place of business located in Irvine, CA. Defendant can be served with process to its registered agent, CT Corporation System, at 818 West Seventh Street, Suite 930, Los Angeles, CA 90017.

13. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTUAL ALLEGATIONS

14. Defendant is attempting to collect an alleged debt from Plaintiff.

15. In or around May of 2018, Defendant began placing calls to Plaintiff's cellular phone number ending in 1557, in an attempt to collect an alleged debt.

16. The calls placed by Defendant mainly originated from (877) 250-4285; (866) 344-5632; (844) 250-3082; (844) 837-1861; (844) 613-5269; (714) 369-1890; and (678) 905-2890;

COMPLAINT AND DEMAND FOR JURY TRIAL

Upon information and belief, these phone numbers are owned, operated or controlled by Defendant or its agent(s).

17. On or about August 23, 2018, at 5:10 p.m., Plaintiff received a phone call from Defendant on his cell phone; Plaintiff heard a short pause before one of Defendant's agents began to speak, indicating the use of an automated telephone dialing system.

18. During this conversation, Plaintiff spoke to a representative, who indicated that Defendant was attempting to collect a debt.

19. Plaintiff stated that he could not make a payment because he has no money. Further, he requested that Defendant stop calling him and that he would call Defendant when he was able to make a payment.

20. That request was ignored as Plaintiff continued to receive phone calls from the Defendant throughout the month August, September, and October 2018.

21. Again, on or about October 9, 2018, at 8:00 p.m., Plaintiff received a phone call from Defendant on his cell phone; Plaintiff heard a short pause before one of Defendant's agents began to speak, indicating the use of an automated telephone dialing system.

22. During this conversation, Plaintiff spoke to a representative, who indicated that Defendant was attempting to collect a debt.

23. Plaintiff told the representative they he had already told Defendant that he has no money to pay Defendant. Further, Plaintiff stated that he was in a major car accident earlier this year, he incurred a lot of medical debt and he has been out of work for about 10 months. Plaintiff requested that Defendant only contact him by mail and he will call Defendant when he could make a payment.

24. That request was ignored as Plaintiff continued to receive phone calls from the Defendant throughout the month of October 2018.

25. Again, on or about October 28, 2018, at 1:01 p.m., Plaintiff received another call from Defendant on his cell phone; Plaintiff heard a short pause before one of Defendant's agents began to speak, indicating the use of an automated telephone dialing system.

26. During this conversation, Plaintiff spoke to a representative, who indicated that Defendant was attempting to collect a debt.

27. Plaintiff, for the third time, told the representative that he already told Defendant twice that he had no money to make a payment and he asked why he was still being called. Plaintiff requested that Defendant contact him through the mail only.

28. Plaintiff's third request for the calls to cease was ignored as Plaintiff continued to receive phone calls from Defendant throughout the month of October, November, and December 2018.

29. In or around December 2018, Plaintiff attempted to make a monthly payment to Kia online.

30. However, Kia had revoked Plaintiff's access to his online account and Plaintiff was not able to make an online payment to Kia.

31. Plaintiff therefore sent his December 2018 payment via USPS mail.

32. On or about January 4, 2019, Plaintiff received a call from Defendant on his cell phone; Plaintiff heard a short pause before one of Defendant's agents began to speak, indicating the use of an automated telephone dialing system.

33. During this conversation, Plaintiff spoke to a representative who indicated that Defendant was attempting to collect a debt.

34. Defendant asked Plaintiff if he could make a payment over the phone and Plaintiff responded that he tried to make a payment online but was denied the ability to make the payment.

35. Plaintiff inquired into why he has been denied access to make payments online and Defendant stated that Plaintiff's status has now reached repossession and could no longer make payments online.

36. Thereafter, Plaintiff began to make his monthly payments by sending a check via USPS mail.

37. On or about January 14, 2019, Defendant called Plaintiff's mom at 9:37 a.m., who lives in New Mexico.

38. During the conversation, Defendant stated that Plaintiff had listed her as a referral and Defendant was calling in regard to a job opportunity.

39. Plaintiff's mom gave the Defendant Plaintiff's cell phone number and the conversation ended.

40. Less than ten (10) minutes later, Defendant called Plaintiff's mom again.

41. Plaintiff's mom is ninety (90) years old.

42. On or about February 6, 2019, Defendant called Plaintiff on his cell phone from (678) 905-2890; Plaintiff heard a short pause before one of Defendant's agents began to speak, indicating the use of an automated telephone dialing system.

43. During this conversation, Defendant indicated that it was attempting to collect a debt.

44. Plaintiff stated that he was driving and could not talk.

45. On or about February 7, 2019, Defendant called Plaintiff on his cell phone; Plaintiff heard a short pause before one of Defendant's agents began to speak, indicating the use of an automated telephone dialing system.

46. During this conversation, Plaintiff stated that he previously asked Defendant to communicate with him in writing only and that yesterday they called him and distracted him while he was driving.

47. Plaintiff once again stated that he wanted all communications in writing.

48. Between May 29, 2018 and August 22, 2018, Defendant called Plaintiff approximately one-hundred sixty (160) times.

49. Between August 23, 2018, and February 7, 2019, Defendant called Plaintiff approximately three-hundred (300) times.

50. Between May 29, 2018 and February 7, 2019, Defendant called Plaintiff approximately four-hundred sixty (460) times.

51. There were several occasions where the Defendant called the Plaintiff multiple times in one day.

52. Plaintiff also received voice mail messages that contained nothing but silence or "dead air."

53. Defendant's calls were excessive and done with the purpose of attempting to harass Plaintiff into making a payment on the account.

54. The calls violated the RFDCPA in multiple ways, including but not limited to:

   a. Causing a telephone to ring repeatedly or continuously to annoy the person called (Cal. Civ. Code § 1788.11(d));

b.  Communicating, by telephone or in person, with the debtor with such frequency as to be unreasonable and to constitute an harassment to the debtor under the circumstances (Cal. Civ. Code § 1788.11(e));

c.  By collecting or attempting to collect a consumer debt and not complying with Sections 1692b to 1692j of the FDCPA (Cal. Civ. Code § 178817).

  i.  Engaging in conduct the natural consequence of which is to harass, oppress or abuse any person in connection with the collection of a debt (15 U.S.C. § 1692d);

  ii.  Using unfair or unconscionable means in an attempt to collect a debt (15 U.S.C. § 1692f);

  iii.  Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number (15 U.S.C. § 1692d(5));

55. The conduct was not only willful but was done with the intention of causing Plaintiff such distress, so as to induce him to pay the debt.

56. Defendant would call Plaintiff multiple times in a single day, and many of the phone calls occurred within short periods of time.

57. Communicating with Plaintiff by telephone with such frequency is unreasonable and constitutes an harassment.

58. Further, the conduct was done with such frequency so as to annoy, harass, oppress, and/or abuse Plaintiff.

59. In or around 2016, Plaintiff had his left hip replaced.

60. In or around September 2017, Plaintiff signaled to his employer that he wanted to take advantage of the Family and Medical Leave Act to have his right hip replaced.

61. Shortly thereafter, Plaintiff was unexpectedly and for no reason terminated from his job in or around September 2017.

62. Plaintiff began actively searching for a new job.

63. On or about March 14, 2018, Plaintiff was in a car accident in which the Kia vehicle at issue suffered major damages.

64. Plaintiff was not at fault.

65. Plaintiff was taken to the hospital and required to spend the night because he suffered tingling sensation from his shoulder down to his fingers and a significant flesh wound to his right forearm, signaling possible nerve damage as a result of the car accident; Plaintiff was also prescribed medication for his injuries.

66. Already under severe financial strains due to being unemployed, the medical costs added an extreme burden to Plaintiff's current financial situation.

67. The bill for the hospital stay/observation, ER trauma team response, imaging and EMS transport exceeded six figures; Plaintiff was recommended to follow up with physical therapy and office visits.

68. At the time of the car accident, Plaintiff was still unemployed, actively seeking a new job, and was making all his payments to Defendant on time.

69. Moreover, Plaintiff was at risk of losing his home and signed up for a program called Keep Your Home California to try and save his home.

70. Plaintiff is classified by the State of California as handicapped prior to the accident and up to the present.

COMPLAINT AND DEMAND FOR JURY TRIAL

71. Plaintiff's financial and medical situation caused him to suffer from stress, anxiety, sleepless nights, headaches, emotional and mental pain and anguish.

72. Plaintiff also suffers from pain in his shoulder and arm from the car accident, pain in his right hip (which needs to be replaced), and from Osteoarthritis, which is a degenerative joint disease.

73. Finally, after ten (10) months of being unemployed, Plaintiff was able to secure employment in or around July 2018.

74. Plaintiff's new salary was less than his previous salary, still making it hard to cover his expenses.

75. Plaintiff's new job requires that he use his cell phone to make calls to clients in different States.

76. Many times, Defendant would call Plaintiff when he was on a work-related call and it would cause an interruption and make Plaintiff lose his train of thought; This was especially frustrating because Plaintiff needed to be focused when he was working given his financial and medical situation.

77. Defendant's phone calls have elevated Plaintiff's stress, anxiety, headaches, sleepless nights, emotional and mental pain and anguish.

78. Defendant has bombarded Plaintiff with automated debt collection calls even after Plaintiff explained his financial and medical condition and requested that Defendant stop calling on more than one (1) occasion.

79. Further, Plaintiff is currently sixty-one (61) years of age, and upon information and belief, Defendant is aware of Plaintiff's elderly age.

80. Each and every call by Defendant caused Plaintiff to suffer from increased stress. anxiety, sleepless nights, emotional and mental pain and anguish.

81. The constant automated debt collection calls from Defendant have made it hard on Plaintiff to get through his day without suffering from emotional and mental pain and anguish.

82. As a result of Defendant's conduct, Plaintiff has sustained actual damages including but not limited to, stress, anxiety, embarrassment, emotional and mental pain and anguish.

## COUNT I

### (Violations of the TCPA, 47 U.S.C. § 227)

83. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

84. Defendant violated the TCPA.  Defendant's violations include, but are not limited to the following:

   a. Within four years prior to the filing of this action, on multiple occasions, Defendant violated TCPA 47 U.S.C. § 227 (b)(1)(A)(iii) which states in pertinent part, "It shall be unlawful for any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice — to any telephone number assigned to a . . . cellular telephone service . . . or any service for which the called party is charged for the call.

   b. Within four years prior to the filing of this action, on multiple occasions, Defendant willfully and/or knowingly contacted Plaintiff at Plaintiff's cellular

COMPLAINT AND DEMAND FOR JURY TRIAL

telephone using an artificial prerecorded voice or an automatic telephone dialing system and as such, Defendants knowing and/or willfully violated the TCPA.

85. As a result of Defendant's violations of 47 U.S.C. § 227, Plaintiff is entitled to an award of five hundred dollars ($500.00) in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B). If the Court finds that Defendants knowingly and/or willfully violated the TCPA, Plaintiff is entitled to an award of one thousand five hundred dollars ($1,500.00), for each and every violation pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

## COUNT II

### (Violation of the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788)

86. Plaintiff incorporates herein by reference all of the above paragraphs of this Complaint as though fully set forth herein at length.

87. Defendant violated the RFDCPA. Defendants violations include, but are not limited to, the following:

   a. Defendant violated Cal. Civ. Code § 1788.11(d) by causing a telephone to ring repeatedly or continuously to annoy the person called;

   b. Defendant violated Cal. Civ. Code § 1788.11(e) by communicating, by telephone or in person, with the debtor with such frequency as to be unreasonable and to constitute an harassment to the debtor under the circumstances;

   c. Defendant violated Cal. Civ. Code § 1788.17 by collecting or attempting to collect a consumer debt without complying with the provisions of Sections

1692b to 1692j, inclusive, of . . . Title 15 of the United States Code (Fair Debt Collection Practices Act).

    i.   Defendants violated Cal. Civ. Code § 1788.17 by violating 15 U.S.C. § 1692d by engaging in conduct, the natural consequence of which is to harass, oppress or abuse any person in connection with the collection of the alleged debt; and

    ii.   Defendant violated Cal. Civ. Code § 1788.17 by violating 15 U.S.C. § 1692d(5) by causing Plaintiff's phone to ring or engaging Plaintiff in telephone conversations repeatedly;

    iii.   Defendant violated CAL. CIV. CODE § 1788.17 by violating 15 U.S.C. § 1692f by using unfair or unconscionable means in connection with the collection of an alleged debt; and

88. Defendant's acts, as described above, were done intentionally with the purpose of coercing Plaintiff to pay the alleged debt.

    a.   Plaintiff clearly stated to the Defendant that he was having money problems, that he could not make a payment and that he wanted the calls to stop.

    b.   Moreover, Plaintiff repeated to Defendant that he wanted the calls to stop at least four (4) times and Defendant ignored Plaintiff's request.

    c.   Defendant's conduct was nothing short of intentional, as it was clearly aware of Plaintiff's request and continued to place calls to Plaintiff cell phone on a daily basis.

89. As a result of the foregoing violations of the RFDCPA, Defendants are liable to Plaintiff for actual damages, statutory damages, and attorneys' fees and costs.

## <u>COUNT III</u>

### (Intrusion Upon Seclusion)

90. Plaintiff incorporates herein by reference all of the above paragraphs of this Complaint as though fully set forth herein at length.

91. Restatement of the Law, Second, Torts § 652(b) defines intrusion upon seclusion as, "One who intentionally intrudes…upon the solitude or seclusion of another, or his private affairs or concerns, is subject to liability to the other for invasion of privacy, if the intrusion would be highly offensive to a reasonable person."

92. Defendant violated Plaintiff's privacy. Defendant's violations include, but are not limited to, the following:

   a. Defendant intentionally intruded, physically or otherwise, upon Plaintiff's solitude and seclusion by engaging in harassing phone calls in an attempt to collect on an alleged debt despite numerous requests for the calls to cease.

   b. The number and frequency of the telephone calls to Plaintiff by Defendant after several requests for the calls to cease constitute an intrusion on Plaintiff's privacy and solitude.

   c. Defendant's conduct would be highly offensive to a reasonable person as Plaintiff received calls that often-interrupted Plaintiff's work and sleep schedule.

   d. Defendant's acts, as described above, were done intentionally with the purpose of coercing Plaintiff to pay the alleged debt.

93. As a result of Defendant's violations of Plaintiff's privacy, Defendant is liable to Plaintiff for actual damages.

## COUNT IV

### (Exemplary Damages – Punitive Damages)

94. Plaintiff incorporates herein by reference all of the above paragraphs of this Complaint as though fully set forth herein at length.

95. Cal. Civ. Code § 3294(a) allows a Plaintiff to recover punitive damages "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice."

96. Cal. Civ. Code § 3294(c)(1) defines "malice" as "conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard for the safety of others.

97. Cal. Civ. Code § 3294(c)(2) defines "oppression" as "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights."

98. Plaintiff is informed and believes that the aforesaid conduct was malicious and oppressive, as those terms are defined by Cal. Civ. Code §§ 3294(c)(1) and 3294(c)(2), as Defendant's conduct was done in complete conscious disregard of Plaintiff's rights.

99. Defendant was aware that Plaintiff had requested to not be called on his cell phone and Defendant continued its bombardment of harassing phone calls to Plaintiff in violation of the TCPA, RFDCPA and Plaintiff's privacy rights.

100.    Defendant called Plaintiff up to several days in a single day on multiple occasions.

101.    Further, Defendant would call Plaintiff multiple times within minutes of each phone call.

102.     Defendant's conduct subjected Plaintiff to severe emotional and mental pain and anguish.

103.     Defendant's conduct placed undue hardship on Plaintiff and disregarded Plaintiff's rights by placing an enormous amount of calls with such harassing and unreasonable frequency.

104.     As a result of Defendant's conduct and violations, Defendant is liable to Plaintiff for punitive damages.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff James Zilli respectfully requests judgment be entered against Defendant, Kia Motors America, Inc., for the following:

A.   Declaratory judgment that Defendant violated the RFDCPA;

B.   Statutory damages of $1,000.00 pursuant to the RFDCPA, Cal. Civ. Code §1788.30(b);

C.   Actual damages pursuant to Cal. Civ. Code §1788.30(a);

D.   Costs and reasonable attorneys' fees pursuant to the RFDCPA, Cal. Civ. Code §1788.30(c);

E.   Statutory damages pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C);

F.   Punitive damages to be determined at trial, for the sake of example and punishing Defendant for their malicious conduct, pursuant to Cal. Civ. Code § 3294(a).

G.   Awarding Plaintiff any pre-judgment and post-judgment interest as may be allowed under the law; and

COMPLAINT AND DEMAND FOR JURY TRIAL

H.  Any other relief that this Honorable Court deems appropriate.

## **DEMAND FOR JURY TRIAL**

Please take notice that Plaintiff demands a trial by jury in this action.

RESPECTFULLY SUBMITTED,

Dated: February 21, 2019

/s/ *Youssef H. Hammoud*

Youssef H. Hammoud, Esq. (SBN: 321934)
Price Law Group, APC
6345 Balboa Blvd, Suite 247
Encino, CA 91316
T: (818) 600-5596
F: (818) 600-5496
E: youssef@pricelawgroup.com
*Attorneys for Plaintiff,*
*James Zilli*